# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 25-CR-2558 SMD |
| | § | |
| GREGORY VANDENBERG, | § | |
| | § | |
| Defendant. | § | |

## OPPOSED MOTION FOR REVOCATION OF MAGISTRATE'S DETENTION ORDER PURSUANT TO 18 U.S.C. SECTION 3145(b)

COMES NOW, the defendant, Gregory Vandenberg, by and through his undersigned counsel, Dean Clark and, pursuant to 18 U.S.C. §3145(b), respectfully requests this Court revoke the Order of Detention issued by Magistrate Judge James E. Marner (District of Arizona) on June 16th, 2025 (Doc. 17).

### The Indictment

The defendant has been indicted on one count of transporting, in interstate commerce, explosives, specifically approximately six fireworks containing 60 grams of gun powder each and 72 additional fireworks (M-150 Black Cat firecrackers), with knowledge and intent that said explosives would be used to kill, injure, and intimidate an individual in violation of 18 U.S.C. § 844(d) (Doc. 20).

The government also seeks forfeiture of the above listed fireworks.

### The Allegations

The government alleges that on June 12, 2025, the defendant went into Bowlin's Continental Divide, a gas station and gift shop, on U.S. Interstate Highway 10, approximately 20

1

miles east of Lordsburg, New Mexico and purchased some fireworks.   The government alleges that while there, the defendant asked for help choosing the largest fireworks that could be thrown directly at people to cause harm and told the clerk, among other things, he was prior special forces military, he was in the Italian navy, he could make pipe bombs, he had explosives in his car, he had a platoon in California where he would be traveling to Los Angeles for the riots to kill law enforcement and government officials.  (Doc. 1)

The indictment is based on those allegations.

**The Process and Investigation**

The next day, June 13, 2025, at approximately 0558 in the morning, numerous Tucson police officers and federal agents found the defendant sleeping in his car in a parking lot at Davis Monthan Air Force base in Tucson, Arizona.  The defendant was sleeping in his car because when he stopped for gas after entering the base, he asked about a number of Army vehicles that were driving around the base and was informed the Army was doing exercises and he was told the hotel at the base was full because of the Army personnel.

When the agents arrived they called out to the defendant once, then immediately shot out the back window (with bean bags or other nonlethal means) of his vehicle and conducted a tactical SWAT team arrest.  The defendant complied with the officers' and agents' commands and exited his vehicle in his underwear and peacefully submitted to them.

The agents then thoroughly searched the defendant's vehicle.  The agents found the fireworks defendant purchased the day before.  The agents did not find any mortar (or other weapons at all) as reported by the clerk from Bowlin's.  The agents did not find any material to make a pipe bomb as reported by the clerk from Bowlin's. With the exception of the fireworks, the agents did not find any firearms or weapons of any kind.  The agents did not find any

evidence that defendant was in fact going to LA any time soon, for any reason.  The agents found

no evidence of criminal conduct or intent whatsoever.

The agents did find the defendant's DD-214 which shows he was honorably discharged

from the U.S. Navy.  They also found a Blue Lives Matter U.S. Flag.  That is an American Flag

with a blue stripe that shows solidarity with law enforcement.  The defendant "backs the blue"

because he was the blue.  Prior to joining the Navy the defendant was a police officer in New

York.

The agents also found a receipt for a hotel on Fort Bliss, Texas where the defendant

stayed the night before he stopped at Bowlin's and purchased the fireworks.  That receipt is

important because it shows the defendant is not some off the grid antigovernment type who hides

out in his car.  When he travels he likes to stay on military bases and rents a room on base when

they are available.

The agents searched the internet for any social media, or other evidence, that the

defendant was antigovernment or antipolice:  they found nothing because the defendant is not

antigovernment or antipolice. As pointed out above, the defendant is a former police officer and

"backs the blue."

The agents found no connections to violent groups or the riots in LA.  The agents found

no evidence the defendant had a platoon who was waiting for him in LA to kill police officers at

the riots.  After using substantial resources searching for evidence, agents found no evidence of

criminal conduct or intent on the internet. Nothing.

Agents also seized the defendant's phone and searched it thoroughly: a phone dump.  The

agents found no calls, texts, or emails to any platoon anywhere, because there never was one.

The agents found no calls, texts, or emails relating to killing police at the riots in LA.  The agents

found no calls, texts, or emails, related to making "pipe bombs."  Agents found no calls, texts, or emails related to criminal conduct or intent whatsoever.

The agents did find a conversation in which the defendant was involved in a minor crash and wanted payment in a hurry because he wanted to go to San Diego, or something to that effect.  Undersigned has not found that conversation in the discovery yet.

The agents searched the defendant's rented storage unit.  They found no firearms or weapons.  They found no bomb making material.  They found no evidence of antigovernment or anti police activity or involvement.  They found no evidence of this mythical platoon waiting for the defendant in California.  They found no evidence of criminal conduct or intent whatsoever.

### The Case Process and Posture

After his arrest, the defendant was taken before U.S. Magistrate Judge James E. Marner in the District of Arizona who found this case is not a presumption case but ordered defendant detained as a danger and a flight risk (Doc. 17).  Undersigned believes the defendant's prior counsel had very limited information at that point in time to effectively litigate and argue for defendant's release.

The defendant has been indicted and, at the time of this motion, is set for a jury trial on December 8, 2025.

The defendant, by this motion and pursuant to 18 U.S.C. §3145(b), requests the Court revoke the magistrate's detention order and release him to the Morris House Residential Care in Las Cruces, pending a resolution of this matter.

**Additional Information**

The defendant, Greg Vandenberg, was born in Poland and is a naturalized U.S. Citizen. After graduating from Baruch College in New York, New York, Vandenberg worked in finance for a while then attended and graduated from the police academy in New York, New York. He worked as a police office in New York, New York before he joined the Navy.

Vandenberg eventually became a Navy SEAL and deployed overseas four times. Navy SEALS are the Navy's special forces operators. SEALs are widely considered to be the best special forces fighters in the world. It was a SEAL team that brought the late Osama bin Laden to justice.

After being honorably discharged from the Navy, Vandenberg was deemed 100% disabled by the Veterans Administration. His disability is based in part on his PTSD and mild TBI. Vandenberg developed PTSD and suffered mild TBI as a result of his experiences in combat.

The VA provides Vandenberg with a monthly cash payment and provides him mental and physical health treatment as may be needed.

Vandenberg likes to travel and has the means and time to do so. He has friends all over the country.

The government later learned that the night before Vandenberg walked into Bowlin's he stayed at a hotel on Ft. Bliss, Texas. While on Ft. Bliss, Vandenberg's vehicle was subjected to a random search. Army authorities found nothing illegal or dangerous. After Vandenberg left Bowlin's he made his way to Davis Monthan Air Force Base in Tucson. When Vandenberg arrived at Davis Monthan, he went to the gas station to fill the tank in his vehicle. While there he noticed several Army vehicles on the base. Army vehicles on an Air Force base are not a

5

common thing.  Vandenberg asked someone at the gas station what was going on and was told the Army was doing exercises and was staying at the base.  Vandenberg was told the hotel on the base was full due to the Army personnel.

Because the hotel was full, Vandenberg considered staying at the FAMCAMP on the base.  The FAMCAMP is a family campground that has shower facilities, laundry facilities, and other amenities.   As it was getting late in the day, Vandenberg decided instead to get a few hours of sleep in his vehicle, then continue his drive to Phoenix.  He did not complete his drive to Phoenix but was instead arrested early the next morning.

Vandenberg's proclivity for staying at military bases in not unusual.  Most military bases are closed bases and one must get permission to enter.  All vehicles are subject to search.  All vehicles are recorded as they enter. Often military personnel at the gate will "run" a person's ID for wants and warrants.  Military bases are highly controlled areas.  They are generally much safer than our civilian communities.  They also offer military personnel and certain veterans substantial benefits and reduced fee services and goods.  Many military retirees and veterans tend to congregate at military bases for the reasons listed above as well as to maintain contact with the military and other military personnel.  Vandenberg is one such person.   He likes staying on military bases as he travels.  This is important because it makes clear: Vandenberg was not hiding out but was staying in a safe place where he is comfortable.

## Law and Argument

The standard of review for the district court's review of a Magistrate Judge's detention or release order under § 3145(a) is de novo.  *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

A judicial officer may make such a finding only after holding a hearing according to the procedures specified in § 3142(f), and the government bears the burden of proof at that hearing. The government must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence, 18 U.S.C. § 3142(f). *Id* at 616

To determine whether there are conditions of release that will reasonably assure defendant's appearance as required and the safety of any other person and the community, the court must take into account the available information concerning the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(3) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*United States v. Selman*, 691 F. Supp. 3d 1334, 1340 (N.D. Okla. 2023)

## 1. The Nature and Circumstances of the Offense Charge.

In this case, the court should give very little weight to the nature of the charge and give great weight to the circumstances of the offense charged. The circumstances giving rise to the charge favor release.

The defendant is accused of transporting fireworks across state lines to kill or injure others. The discovery reveals, according to the clerk at Bowlins', while Vandenberg was looking at fireworks there he asked the clerk for or about the biggest fireworks he could get to throw at people or police. Despite the clerk's allegation, the defendant did NOT purchase the biggest fireworks he could throw at people. To the contrary the defendant purchased one "mortar" and several M-150 black cat firecrackers. Clearly not the biggest fireworks on the shelf: not the biggest purchase ever.

Additionally, the clerk claims the defendant told him he (defendant) had explosives in his car and had a platoon waiting on him in California. The discovery reveals the defendant did not have explosives in his car, or his storage shed, or anywhere else. They simply did not exist. Additionally, discovery reveals the defendant had no contacts at all with the mythical platoon waiting for him in California. The platoon simply did not exist.

Although nature of the charge, at first blush, may create concern, the Court should remember, it's only a charge and the defendant is presumed innocent. The court should instead focus primarily on the circumstances of the offense as detailed above. The circumstances of the offense weigh heavily in favor of the defendant.

## 2. The Weight of the Evidence Against the Person.

This factor weighs heavily in favor of the defendant for one simple reason: the government has no credible evidence whatsoever to support the assertion that the defendant was transporting the fireworks to LA to hurt police or citizens at the riots.

The government's star witnesses are the two clerks from Bowlin's Travel Center, a road side gas station and souvenir shop on I-10, in the middle of nowhere.   As pointed out above, one witness/clerk claims the defendant made a number of statements about killing police.   The witness claims the defendant sought out the biggest fireworks he could throw at people – yet the defendant did not buy the biggest but instead about $55.00 worth.   That same clerk claimed Vandenberg tried recruiting him (witness) into his (Vandenberg's) platoon that was in California so they could attack the police.   The government searched high and low but could not find this platoon.  Again the reason is simple: it did not exist.  Additionally, it defies logic that a former Navy SEAL with over 200 combat missions on one deployment alone, would attempt to recruit a random clerk from a road side gas station and souvenir shop to join him on a murderous rampage with one mortar and some firecrackers.

That same clerk claims Vandenberg told him he has explosives in his car.  As pointed out above, the night before this incident, Vandenberg's vehicle was searched while he was staying at the military hotel on Fort Bliss, Texas.  There were no explosives found.  When Vandenberg was arrested early the next morning after the incident, again on a military base, there were no explosives found.  There were also no explosives found in Vandenberg's storage which was thoroughly searched.  There were no references to explosives anywhere in the discovery thus far. Again for one simple reason: the explosives never existed.

A second witness claims Vandenberg tried covering his name on his ID with his index finger.  A review of the video of her checking his ID shows either she is lying or does not know which finger is our index finger.

It appears the only evidence that government has that the defendant was going to California are some text messages related to a minor crash in which Vandenberg demanded immediate payment for damage to his car and told the other driver, or his insurance company, he wanted to be paid right away because he was going to San Diego.   This contradicts the government's theory and assertions that Vandenberg was going to LA.  It is believed the only evidence the government has that Vandenberg was actually going to California (other than the clerks' odd allegations) were a few messages when he wanted to be paid right away for a minor car crash.

### 3. The Nature and Characteristics of the Person.

 (A) Mr. Vandenberg is a college educated former policer officer and former Navy SEAL with over 200 combat missions.  He was honorably discharged and is deemed 100% service connected disabled by the Veterans Administration.  Mr. Vandenberg is coping with PTSD and the loss of his mother and sister.  He has mental health resources at the VA, if needed.

Mr. Vandenberg receives a monthly payment from the VA and works occasional jobs to fill his time and supplement his VA income.  Vandenberg is able to support himself financially. Although Mr. Vandenberg does not have substantial family ties, he does have many long-time friends and newly made friends who can assist him, if needed.

Sadly, when Mr. Vandenberg's mother passed away, he turned to alcohol for solace.  He has a few alcohol related prior charges, including DUIs.  Mr. Vandenberg has since quit drinking

and is focused on taking care of himself and traveling. There is no evidence that Mr. Vandenberg has ever missed court.

(B) Mr. Vandenberg may be on probation for a DUI in California. The pretrial report does not show a warrant for that matter so if released in this matter he will immediately contact his California lawyer and address that matter.

Although Mr. Vandenberg has some alcohol related criminal history, he has since quit drinking and his characteristics as detailed above, favor his release.

### 4. The Nature and Seriousness of the Danger to any Person or the Community that Would be Posed by the Person's Release.

In this case, there would be no serious danger to any person by releasing Mr. Vandenberg. Mr. Vandenberg has already quit drinking. He has had several months of pretrial confinement to impress upon him the need to do exactly what the Court, or a pretrial supervisor, tells him to do. Mr. Vandenberg is a veteran who knows how to follow orders: he will surely follow this Court's order.

Mr. Vandenberg is requesting to be released to Morris House Residential care which provides a structured home for people, including veterans, who might require assistance with daily living. By releasing him to Morris House, Mr. Vandenberg would have access to the local VA for mental health resources or medications if needed.

Finally, as pointed out in great detail above, the government's case is flimsy at best. The government case is built around the expected testimony of two wholly unreliable witnesses. The government has found, after several months of digging, no physical evidence to support, the claims made by its witnesses. It appears the government is going to attempt to stretch some correspondence about going to San Diego when attempting to settle a vehicle damage claim, into

evidence of intent to go to LA to inure of kill police officers.  The government will clearly be overreaching.

**The Government's Position to This Motion**

The government opposes this motion.

WHEREFORE, Mr. Vandenberg, requests the Court set this matter for a hearing so that additional evidence and argument may be presented and after said hearing, release him to the Morris House in Las Cruces.

Respectfully Submitted,

RUSSELL DEAN CLARK, LLC

*/S/ R.D. Clark*_____
Russell Dean Clark
Attorney for Greg Vandenberg
P.O. Box 576
Las Cruces, NM 88004
Telephone: (575) 526-9000
Facsimile: (575) 526-9800

**CERTIFICATE OF SERVICE**

I, Russell Dean Clark, certify that on 3rd day of November, 2025, I caused the instant motion to be filed with the Clerk of the Court using the CM/ECF system that will serve all other parties entitled to service and notice

*/S/ R.D. Clark*_____
Russell Dean Clark